By the Court.
This controversy, in its different forms, is of a ripe maturity. On September 3, 1929, the Council of the city of Columbus passed an ordinance “To regulate the price that may be charged for natural gas in the city of Columbus during the period of five years from the twelfth day of November, 1929, and providing for the submission of this *603 ordinance to a referendum vote at an election to be held November 5, 1929.”
Such ordinance was submitted to a vote of the qualified electors of the city on November 5, 1929, and was approved by a majority of those voting thereon.
It fixed a rate of 48 cents per M. c. f. with a minimum monthly charge of 75 cents, and was to become effective from and after November 12, 1929.
The Columbus Gas & Fuel Company, being affected thereby and dissatisfied therewith, promptly filed a complaint against such ordinance with the Public Utilities Commission of Ohio.
After a protracted hearing, the commission, on October 3, 1932, made an order setting aside the rates embodied in the ordinance and fixed the price to be charged for natural gas by the Columbus Gas & Fuel Company in Columbus during the period covered by the ordinance at 55 cents per M. c. f. with an additional charge of 5 cents per M. c. f. if monthly bills were not paid within a specified time, and established a monthly minimum charge of 75 cents without discount. Re Columbus Gas & Fuel Company, Public Utilities Reports, 1933A, 337.
This order was concurred in by two of the commissioners who filed an opinion in support thereof. The third member dissented and filed a separate opinion in which he found that the ordinance rate of 48 cents per M. c. f. was reasonable and lawful and provided a sufficient compensation to the Columbus Gas & Fuel Company. Re Columbus Gas & Fuel Company, Public Utilities Reports, 1933A, 378.
Thereupon, error, proceedings were prosecuted by the gas company to the Supreme Court of Ohio and a cross-petition was filed by the city of Columbus.
Adopting in large measure the findings, figures and conclusions contained in the opinion of the minority member of the Public Utilities Commission, this court *604 reversed the findings and order of the commission and held that the rate of 55 cents as fixed in such order was unlawful and unreasonable and that the rate of 48 cents per M. c. f. established by the ordinance in question was “neither unreasonable, unlawful, nor confiscatory.” Columbus Gas & Fuel Co. v. Public Utilities Commission, 127 Ohio St., 109, 187 N. E., 7.
In arriving at the conclusion embraced in its order, the majority of the Public Utilities Commission made allowance for amortization representing depreciation in value of producing gas wells. This court held such an allowance unauthorized and unwarranted, and stated in the eighth paragraph of the syllabus in Columbus Gas & Fuel Co. v. Public Utilities Commission, supra, that ‘ ‘ The laws of Ohio make no provision for amortization, and the Public Utilities Commission of Ohio is without authority to take it into consideration in the ascertainment of values in fixing a rate.”
Such determination was a factor in causing this court to reverse the order of the Public Utilities Commission and remand the case for further proceedings.
Naturally, the order of reversal was unsatisfactory to the Columbus Gas & Fuel Company and it took an appeal to the Supreme Court of the United States on constitutional grounds. The case was there dismissed for want of a final judgment. Columbus Gas & Fuel Co. v. Public Utilities Commission, 291 U. S., 651, 78 L. Ed., 1045, 54 S. Ct., 559.
Thereupon, this court amended its judgment entry by eliminating the remand, and inserting a direction to the Public Utilities Commission to establish the rate in accordance with the ordinance of the city of Columbus, to wit, 48 cents per M. c. f., which was done.
Upon an appeal to the Supreme Court of the United States from the judgment as thus amended, that court assumed jurisdiction of the cause and rendered an opinion reversing the judgment of this court and re *605 manding the ease here “for further proceedings not inconsistent with this opinion.” Columbus Gas & Fuel Co. v. Public Utilities Commission, 292 U. S., 398, 78 L. Ed., 1327, 54 S. Ct., 763.
After receipt of the mandate from the Supreme Court of the United States, this court remanded the case to the Public Utilities Commission, with a direction “to fix a rate in accordance with the opinion of the Supreme Court of the United States.” Columbus Gas & Fuel Co. v. Public Utilities Commission, 129 Ohio St., 118, 193 N. E., 612.
In obedience thereto, the commission entered upon a reconsideration of the case, which resulted in its adherence (one member dissenting) to the 55-cent rate originally fixed, on practically the same bases originally approved. Its last order recites:
“That the rate per thousand cubic feet of 55^, with an additional charge of 5$ per thousand cubic feet, if monthly bills are not paid within a fixed time, and a monthly minimum charge of 75‡ without discount, are just and reasonable rates and charges for the service furnished and supplied by said appellant [The Columbus G-as & Fuel Company] in the city of Columbus, Ohio.”
The case finds lodgment in this court by reason of the error proceedings prosecuted by the city of Columbus.
Our present duty is to determine whether the. last order of the Public Utilities Commission establishing a gas rate for the city of Columbus for the five-year period from November 12, 1929, is in conformity with the instructions given by this court upon the remand.
As previously noted, the Supreme Court of Ohio held that amortization or depreciation could not be properly included in determining the Columbus gas rate, and the elimination of that factor, which the commission took into account, materially influenced our *606 finding that the ordinance rate of 48 cents was “neither unreasonable, unlawful, nor confiscatory.”
Let us give heed to certain language of Mr. Justice Cardozo on this subject, in the opinion reversing this court :
“All that the State court had to do in order to uphold the determination in the Dayton Power & Light Company case [Dayton Power & Light Co. v. Public Utilities Commission, 292 U. S., 290, 78 L. Ed., 1267, 54 S. Ct., 647; 127 Ohio St., 137, 187 N. E., 18], was to reach the conclusion that adherence to the old rates would not result in confiscation. What it said as to the possibility of excluding an amortization allowance and several other contested items did not determine the result. * * * Here, on the other hand, the decision of the State court reverses the determination of the Commission, and in so doing excludes important items, such as an amortization charge and others, which had received allowance there. * * *
“We have seen in the Dayton Power & Light Company case that in determining the price to be paid for gas delivered at the gateway [city limits], the Commission included among the operating expenses of the affiliated seller an annual allowance of $4,158,954, to amortize the value of leaseholds No. 1 [the only leaseholds then in use] and of the well structures and equipment used in connection therewith, and thus provide a fund that would restore the depleted capital when the gas had been exhausted. The same allowance was made here.
“Upon the appeal by the City of Columbus to the Supreme Court of Ohio the item thus allowed was excluded altogether. The court * * * put its judgment upon the ground that the statute of Ohio defining the powers of the Commission and the method of appraisal makes no provision for depletion (Ohio General Code, Sections 499-9 to 499-13), and that the stat *607 ute, and nothing else, gives the applicable rule. * ' * * the conclusion does not follow that the statutory procedure may set at naught restrictions imposed upon the states and upon all their governmental organs by the Constitution of the Nation.
“To withhold from a public utility the privilege of including a depletion allowance among its operating expenses, while confining it to a return of upon the value of its wasting assets, is to take its property away from it without due process of law, at least when the waste is inevitable and rapid. # * *
“We hold that a fair price for gas delivered at the gateway [city limits] includes a reasonable allowance for the depletion of the operated gas fields and the concomitant depreciation of the wells and their equipment. * * *
“The Supreme Court of Ohio struck out these [depreciation] allowances, thereby reducing the rate payable at the [Ohio] river from 22 cents to 17.79 cents. In so doing it adhered to the ruling, announced elsewhere in the same opinion, that under the statutes of Ohio amortization is not permissible to replenish wasting assets. For reasons already stated these items should be restored with such modification in amount as may be found to be appropriate upon a survey of the evidence. * * *
“ * # * the rate as fixed by the ordinance must be supplemented by an allowance for amortization or depletion. * * *
“There being error in the reduction of the appellant’s operating expenses by the refusal to make provision for replenishing the wasting assets of its affiliated companies, the decree is reversed and the cause remanded to the Supreme Court of Ohio for further proceedings not inconsistent with this opinion.”
The words above quoted, viz.: “The rate as fixed by the ordinance must be supplemented by an allow *608 anee for amortization or depletion,” are significant. They can only mean that the Supreme Court of the United States will not uphold a rate of 48 cents per thousand cubic feet, no matter how it is reached. That court has said in effect that such rate is unlawful, unreasonablé and confiscatory.
The Supreme Court of Ohio is not a rate-fixing body. However, a majority of the court is now of the opinion that a rate between the 48 cents fixed by ordinance and the 55 cents established by the Public Utilities Commission would be sufficient , in this case, and would come within the principles announced by the Supreme Court of the United States, but can or should we presently declare that the 55 cent rate twice ordered by the commission after considering and weighing evidence covering some 11,000 pages, and involving some 700 exhibits, is so unreasonable or unlawful as to justify a reversal?
Our negative answer is somewhat influenced by practical and undisputed considerations. The ordinance in question expired in November of 1934, and the rates under consideration are for the five-year period immediately preceding such date.
As a matter of fact, the natural gas consumers of the city of Columbus affected by these proceedings have not fared so badly. From November 12, 1929, to February 1, 1933, they paid a rate of only 48 cents per thousand cubic feet, as prescribed by the ordinance. From February 1,1933, to November 12,1934, they paid a rate of 55 cents as established by the commission. A mathematical computation demonstrates that over the five-year period the average rate paid was 50 cents per thousand cubic feet. Under the decision of the Supreme Court of the United States it may not be logically contended that such rate would be unreasonable or unlawful.
*609 In conformity with the views expressed, the order of the Public Utilities Commission will be affirmed.

Order affirmed.

Weygandt, C. J., Jones, Matthias, Day and Zimmerman, JJ., concur.